UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUDSON GLOBAL RESOURCES
MANAGEMENT, INC.,

          **Plaintiff,**

vs.                                     **Case No. 8:05-CV-1446-T-27TBM**[1]

JASON BECK, STEVEN BELBOT, DAVID
GANNAWAY, and TECH USA, INC.,

          **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** are Defendants Jason Beck, Steven Belbot, and Tech USA, Inc.'s

Motions to Sever and Dismiss Arbitrable Claims for Lack of Subject Matter Jurisdiction or,

Alternatively, to Refer/Compel Severed Claims to Arbitration (Dkts. 22, 23 & 26), Jason Beck's and

Steven Belbot's Affidavits in Support (Dkt. 28), and Plaintiff's Response (Dkt. 36).

### *Factual Background*

Plaintiff, Hudson Global Resources Management, Inc. ("Plaintiff" or "HHG"), a staffing

business that recruits technical and specialized employees on behalf of its clients, initiated this action

against three former employees, David Gannaway ("Gannaway"), Jason Beck ("Beck"), and Steven

Belbot ("Belbot"), alleging that "they joined in a conspiracy and concerted action to leave [Plaintiff],

*en masse*, and join a competitor," Defendant, Tech USA, Inc. ("Tech USA").[2] (Dkt. 6, Am. Compl.;

Dkt. 36, p. 1).

_____

[1] Following recusal by Judge Lazzara and reassignment of this case (Dkt. 11), the case number changed to 8:05-CV-1446-T-27TBM. The parties shall use the new case number on all future filings.

[2] Gannaway filed a motion to dismiss based on lack of personal jurisdiction (Dkt. 21), which is addressed by separate Order.

Like Plaintiff, Tech USA is a staffing business that recruits technical and specialized employees on behalf of its clients. (Dkt. 6, ¶ 7). Although Tech USA is a Maryland corporation, Plaintiff alleges that Tech USA "directly competes" with Plaintiff in Florida, Maryland, and Georgia. (Dkt. 6, ¶¶ 5 & 7).

Beck is a Florida resident and worked for Plaintiff from June 2003 through May 6, 2005. (Dkt. 6, ¶¶ 2, 19 & 23). In August, 2003, Plaintiff and Beck entered into a Confidentiality, Non-Solicitation and Work Product Assignment Agreement, and Mutual Agreement to Arbitrate Claims ("Agreement"). (Dkt. 6, Ex. A, pp. 18-23).

Belbot is a Maryland resident and worked for Plaintiff from February 2004 though May 6, 2005. (Dkt. 6, ¶¶ 3, 24 & 28). In December 2003, Plaintiff sent Belbot an offer letter setting forth the conditions of his employment ("employment letter"). (Dkt. 6, Ex. B, pp. 25-26). Belbot signed the letter acknowledging the terms presented. (Dkt. 6, Ex. B, pp. 25-32). The letter contained the following reference to arbitration:

> In the event a legal dispute arises, arbitration provides a quick and cost effective means of resolution for all parties. All employees are required to sign the Company arbitration agreement prior to the commencement of employment. The employment offer is contingent upon the execution and return of this agreement. The agreement is enclosed for your review and signature.

(Dkt. 6, Ex. B, p. 26, ¶ 3). Attached to the letter was a Confidentiality, Non-Solicitation and Work Product Assignment Agreement, and Mutual Agreement to Arbitrate Claims ("Agreement"), which was the same as the Agreement executed by Beck. (Dkt. 6, Ex. B, pp. 27-32). Neither Plaintiff nor Belbot signed the Agreement. (Dkt. 6, Ex. B, pp. 32).

The Agreement provides that "[t]he Parties understand and agree that by entering into this agreement to arbitrate claims, each anticipates gaining the benefit of arbitration as a speedy, impartial dispute-resolution procedure, and understands and agrees that both are voluntarily consenting to

forego other types of litigation, except as specifically listed below ..." ("arbitration agreement").

(Dkt. 6, Ex. A, pp. 19-20, § 4.1).  The Agreement specifies claims to be arbitrated and claims

excluded from the arbitration agreement:

§ 4.2   Claims Covered by this Agreement

HHG and Employee mutually consent to the resolution by arbitration of all claims or controversies (tort, contract or statutory), whether or not arising out of Employee's employment (or its termination), that HHG may have against Employee or that Employee may have against HHG ("claims").  The claims covered by this Agreement include, but are not limited to, claims for wages, bonuses, overtime pay, or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims, including but not limited to, defamation, wrongful termination, invasion of privacy and intentional infliction of emotional distress; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age marital status, or medical condition or disability), harassment and/or retaliation; claims for benefits or the monetary equivalent of benefits (except where an employee benefit or pension plan specifies that its claims procedure is subject to an arbitration procedure different from this one); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded in the following Section 4.3.

§ 4.3   Claims Not Covered by the Agreement

Claims not covered by this Agreement include claims that Employee may have now or in the future for workers' compensation or unemployment benefits.  Also not covered are claims by HHG based on criminal acts of Employee, and *claims for injunctive or other equitable relief for: (a) breach or threatened breach of any non-competition, non-solicitation, confidentiality and/or patent or invention assignment agreements; (b) unfair competition; or (c) the misappropriation, use and/or unauthorized disclosure of trade secrets or confidential information, as to each of which Employee understands and agrees that HHG may immediately seek and obtain relief from a court of competent jurisdiction.*

(Dkt. 6, Ex. A, p. 20, §§ 4.2 & 4.3) (*emphasis added*).

Plaintiff's claims include breach of confidentiality agreement against Beck (Count I), breach

of confidentiality agreement against Belbot (Count II), misappropriation of trade secrets against

Beck, Belbot, and Tech USA (Count III), tortious interference against Beck, Belbot, and Tech USA

(Count IV), breach of duty of loyalty/fiduciary duty against Beck and Belbot (Count V), participating

3

in a breach of fiduciary duty/duty of loyalty against Beck, Belbot, and Tech USA (Count VI), and civil conspiracy against Beck, Belbot, and Tech USA (Count VII).[3]  (Dkt. 6, pp. 8-14).  Plaintiff seeks to enjoin any further breach of the Agreement, use or misappropriation of Plaintiff's confidential information and trade secrets, and interference with Plaintiff's advantageous business relationships with its employees and clients.  (Dkt. 6, p. 14).  Plaintiff also seeks imposition of a constructive trust on Defendants' unearned compensation from Plaintiff and wrongfully-earned profits occasioned by Defendants' breach of duties to Plaintiff.  (Dkt. 6, p. 14).  Further, Plaintiff seeks restitution, damages, punitive damages, attorney's fees and costs.  (Dkt. 6, p. 15).

### *Beck's Motion to Dismiss*

In moving to dismiss, Beck acknowledges that Plaintiff's claims for injunctive or other equitable relief based on his alleged breach of the confidentiality agreement (Count I) and misappropriation of trade secrets (Count III) are excluded from the arbitration agreement.  (Dkt. 22, p. 4).  Beck argues, however, that all of Plaintiff's other claims are covered by the arbitration agreement and, therefore, are not properly before this Court.  (Dkt. 22, p. 6).  Therefore, Beck seeks severance of Counts I and III and dismissal of Plaintiff's claims for tortious interference (Count IV), breach of duty of loyalty/fiduciary duty (Count V), participating in a breach of fiduciary duty/duty of loyalty (Count VI), and civil conspiracy (Count VII).  (Dkt. 22, pp. 5-8).  As an alternative to dismissal, Beck requests that the arbitrable claims be severed and referred or compelled to arbitration.  (Dkt. 22, pp. 8-16).  In response, Plaintiff argues that none of its claims against Beck

---

[3] Plaintiff's claims against Gannaway include tortious interference (Count IV), breach of duty of loyalty/fiduciary duty (Count V), participating in a breach of fiduciary duty/duty of loyalty (Count VI), and civil conspiracy (Count VII).  (Dkt. 6).

(or the other Defendants) are subject to arbitration.[4] (Dkt. 36, pp. 10-11). Notwithstanding, Plaintiff does not dispute that, in the event this Court finds some or all of its claims to be arbitrable, those claims should be referred or compelled to arbitration pursuant to the Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. §§ 3 & 4.

The FAA provides that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[5] 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The Act provides for a stay of proceedings in a federal district court when an issue raised in the proceeding is referable to arbitration.[6] 9 U.S.C. § 3. The Act also provides for an order compelling arbitration when one party in the proceeding has failed or refused to comply with an

---

[4] Plaintiff's argument that all of its claims are excluded from the arbitration agreement is without merit. (Dkt. 36, pp. 10-11). The arbitration agreement excludes only those claims expressly listed in § 4.3, including workers' compensation claims, unemployment benefit claims, criminal actions, and claims for injunctive or other equitable relief based on: (a) breach or threatened breach of any non-competition, non-solicitation, confidentiality and/or patent or invention assignment agreements; (b) unfair competition; or (c) the misappropriation, use and/or unauthorized disclosure of trade secrets or confidential information. The agreement does not exclude claims for injunctive or other equitable relief based on other causes of action, including those listed in § 4.2.

[5] Plaintiff does not address whether the Agreement involves commerce. The phrase "involving commerce" requires only "that the transaction in fact involve interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995). The Court finds that the Agreement involved commerce based on the multistate nature of Plaintiff's business and the diverse citizenship of its employees. *See id.* at 282. Therefore, the FAA applies to this action.

[6] 9 U.S.C. § 3 provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ...."

arbitration agreement.[7]  9 U.S.C. § 4.  The Supreme Court has interpreted the FAA to "manifest a liberal federal policy favoring arbitration agreements."  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (*internal quotations and citation omitted*).

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (*citing* 9 U.S.C. §§ 3 & 4).  The Supreme Court has mandated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (*citations omitted*).  A motion to arbitrate should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue."  *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979) (*citations omitted*).

In determining whether claims are arbitrable, the language of the applicable arbitration agreement must be examined based on the ordinary principles governing formation and enforcement of contracts.  *American Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997).  "Absent some ambiguity in the agreement ... it is the language of the contract that defines the scope of disputes subject to arbitration."  *Waffle House, Inc.*, 534 U.S. at 289.  "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather

---

[7] 9 U.S.C. § 4 provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which ... would have jurisdiction ... for an order directing that such arbitration proceed in the manner provided for in such agreement. ... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

than the legal causes of action asserted." *H.S. Gregory, G.E. v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) (*citing Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993) ("a party may not avoid a contractual arbitration clause merely by casting its complaint in tort").

"[T]he FAA does not require parties to arbitrate when they have not agreed to do so, . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *American Express Fin. Advisors, Inc.*, 122 F.3d at 940 (*quoting Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). The Act "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences, Inc.*, 489 U.S. at 478.

As acknowledged by Beck, Plaintiff's claims for injunctive and equitable relief based on Defendants' alleged breach of the confidentiality agreement and misappropriation of trade secrets are not subject to arbitration based on the express exclusion in the arbitration agreement. (Dkt. 6, Ex. A, p. 20, § 4.3). Pursuant to the arbitration agreement, Plaintiff is permitted to "immediately seek and obtain relief from a court of competent jurisdiction" for these claims. (Dkt. 6, Ex. A, p. 20, § 4.3). Therefore, Counts I and III of Plaintiff's Complaint against Beck are not arbitrable.

Plaintiff's claims based on Defendants' alleged tortious interference, breach of duty of loyalty/fiduciary duty, participation in a breach of fiduciary duty/duty of loyalty, and civil conspiracy are subject to arbitration as those claims are expressly listed as claims covered by the arbitration agreement. The arbitration agreement provides that claims covered by the Agreement include "claims or controversies (tort, contract or statutory), whether or not arising out of Employee's employment (or its termination)" including claims for breach of any contract or covenant (express or implied) and tort claims, except as otherwise excluded in § 4.3. (Dkt. 6, Ex. A, p. 20, § 4.2).

7

Because Plaintiff's remaining claims are encompassed within the arbitration agreement and are not expressly excluded from its application, they are subject to arbitration.[8] *See Waffle House, Inc.*, 534 U.S. at 289 (absent ambiguity in the agreement, the language of the contract defines the scope of disputes subject to arbitration).

An agreement to arbitrate is enforceable under federal and Florida law if: 1) a valid, written agreement to arbitrate exists; 2) an arbitrable issue exists; and 3) the parties have not waived their right to arbitration. *Smart v. Bob Wilson Dodge Inc.*, No. 8:06-CV-22-T-30TGW, 2006 WL 1037113, * 2 (M.D. Fla. April 19, 2006) (*citing Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). Here, all three requirements for enforcement of arbitration are met as a valid, written arbitration agreement exists between Beck and Plaintiff, arbitrable issues exist, and neither Beck nor Plaintiff have waived their right to arbitration. Accordingly, pursuant to 9 U.S.C. §§ 3 & 4, this matter shall proceed to arbitration on claims covered by the arbitration agreement, including Counts IV, V, VI, and VII of Plaintiff's Complaint against Beck.[9] *See Dean Witter Reynolds, Inc.*, 470 U.S. at 217.

---

[8] To the extent Plaintiff's Complaint is unclear as to the remedies/claims plead against each Defendant for purposes of determining arbitrability, the remedies and claims will be considered by the arbitrator. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. "A finding that the scope of the arbitration clause is vague does not automatically catapult the entire dispute into arbitration. Rather, such a finding creates a presumption in favor of arbitration. This presumption can be overcome with clear evidence that the parties did not intend the claim to be arbitrable." *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000) (*citing Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25) (*citations omitted*). Plaintiff has not offered clear evidence that its claims, regardless of the remedy sought and apart from Counts I, II, and III, are excluded from the arbitration agreement.

[9] In its Complaint, Plaintiff alleges that Gannaway entered into a Confidentiality Agreement with Plaintiff. (Dkt. 6, ¶ 30). However, Plaintiff does not indicate whether Gannaway's Agreement is the same as Beck's (i.e., whether it contains an arbitration agreement) and does not attach a copy of Gannaway's Agreement to the Complaint. In Gannaway's affidavit in support of his motion to dismiss, he avers that he executed an Agreement with Plaintiff, including an arbitration agreement. (Dkt. 28, p. 5, ¶ 17). Assuming Gannaway's Agreement was the same as Beck, it would appear that Gannaway would be entitled to arbitration on Counts IV, V, VI, and VII of Plaintiff's Complaint. However, as this Court lacks personal jurisdiction over Gannaway and Gannaway's Agreement is not before the Court, a determination regarding arbitrability of these claims cannot be made.

### *Belbot's Motion to Dismiss*

In moving to dismiss, Belbot argues that all of Plaintiff's claims against him are subject to arbitration based on the broad arbitration provision contained in the employment letter sent to him by Plaintiff. (Dkt. 23, pp. 5-6). Specifically, Belbot argues that the provision for arbitration in the letter is not limited in any way, contains no exclusions, and instead refers to a resolution of a "legal dispute" by arbitration. (Dkt. 23, pp. 5-6). In the alternative, Belbot argues that the Agreement presented to him by Plaintiff, as attached to his employment letter, controls the parties' relationship, despite the fact that it was not signed or executed. (Dkt. 23, p. 16-20). To this extent, Belbot makes the same arguments as those made by Beck in support of his motion to dismiss, or alternatively, to refer or compel arbitration. (Dkt. 23, pp. 6-15).

Belbot's argument that the arbitration provision set forth in the employment letter controls and requires all of Plaintiff's claims be arbitrated is without merit. The employment letter expressly references and attaches the Agreement, which contains a detailed arbitration clause. Although the letter references arbitration, it unambigiously refers to the Agreement as the controlling contract between the parties.

Belbot and Plaintiff's failure to sign or execute the Agreement does not preclude contractual enforcement of the arbitration agreement, particularly since Belbot signed the employment letter that referenced the Agreement and both parties performed under the contract. *See Consolidated Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So. 2d 500, 503 (Fla. 4th DCA 2003) (a contract is binding, despite a lack of signatures, where both parties have performed under the contract) (*citation omitted*). To hold otherwise would thwart the parties' clear intentions expressed at the start of their relationship. Further, the Eleventh Circuit has recognized that "no signature is needed to satisfy the FAA's written agreement requirement." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369

(11th Cir. 2005) ("[T]he plain language of [9 U.S.C.] § 2 requires that the arbitration provision be 'written.' It does not, however, require that the agreement to arbitrate be signed by either party; nor does any other provision of the FAA"); *see also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993) ("lack of a written arbitration agreement is not an impediment to arbitration"); *McBro Planning and Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir. 1984) (*citations omitted*).[10]

Accordingly, the Agreement controls, and Plaintiff's claims against Belbot are subject to the arbitration agreement. For the reasons stated with respect to Beck's motion, pursuant to 9 U.S.C. §§ 3 & 4, the case shall proceed to arbitration on claims covered by the arbitration agreement, including Counts IV, V, VI, and VII of Plaintiff's Complaint against Belbot. *See Dean Witter Reynolds, Inc.*, 470 U.S. at 217.

### *Tech USA's Motion to Dismiss*

In moving to dismiss, Tech USA argues that the broad arbitration provision contained in Belbot's employment letter encompasses all of Plaintiff's claims against it and those claims are therefore subject to arbitration. (Dkt. 26, p. 6). Alternatively, Tech USA argues that if the Agreement controls, Plaintiff's claims for injunctive relief against it must be severed from the arbitrable claims and the arbitrable claims must be dismissed or referred to arbitration. (Dkt. 26, pp. 7-16). Tech USA argues that it is entitled to enforcement of arbitration despite the fact that it was not a party or signatory to the Agreement. (Dkt. 26, pp. 16-20).

As stated previously with respect to Belbot's motion, Tech USA's argument that the arbitration provision set forth in the employment letter controls is without merit. For purposes of

---

[10] *Compare Czarina v. W.F. Poe Syndicate*, 358 F.3d 1286, 1291 (11th Cir. 2004) (agreement-in-writing requirement for applicability of FAA not met where the parties' arbitration agreement required a written arbitration agreement "signed by the parties" but the agreement was not signed) (*citations omitted*).

determining the enforceability of arbitration, Belbot is bound by the Agreement, not the employment letter. If Tech USA is entitled to the protections of arbitration, it is entitled to those protections based on Beck and Belbot's Agreement with Plaintiff.

A nonsignatory or non-party to an arbitration agreement may be entitled to a stay of claims pending arbitration if the claims against it are "intimately founded in and intertwined with the underlying contract obligations" and if they are "based on the same operative facts and are inherently inseparable from the claims against" a party or signatory. *Harvey*, 199 F.3d at 795; *McBro Planning and Dev. Co.*, 741 F.2d at 344 (*citation omitted*). While a nonsignatory or non-party to an arbitration agreement may have no right to enforce arbitration itself, if its potential liability derives from the conduct or potential liability of a party or signatory, it is entitled to a stay pending arbitration. *Harvey*, 199 F.3d at 795.

Moreover, the Eleventh Circuit has recognized that the doctrine of equitable estoppel allows a nonsignatory to compel arbitration in two circumstances. *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). First, where the signatory to an arbitration agreement must rely on the terms of the agreement in asserting its claims against a nonsignatory, the nonsignatory may compel arbitration. *Id.* (*quotations and citation omitted*). This situation arises when each of a signatory's claims against a nonsignatory makes reference to, presumes the existence of, arise out of, or relate directly to the written arbitration agreement. *Id.* (*quotations and citation omitted*). Second, equitable estoppel will permit a nonsignatory to compel arbitration when the signatory raises allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (*citations omitted*).

Here, Plaintiff alleges that Defendants engaged in a conspiracy, whereby Beck, Belbot, and Gannaway resigned from Plaintiff's employment and joined Tech USA, Plaintiff's competitor.

Plaintiff alleges that Beck, Belbot, and Tech USA, in concert, have misappropriated its trade secrets (Count III). Plaintiff further alleges that along with Beck, Gannaway, and Belbot, Tech USA committed tortious interference (Count IV), participated in a breach of fiduciary duty/duty of loyalty (Count VI), and engaged in a civil conspiracy (Count VII).

Plaintiff's claims against Tech USA are "intimately founded in and intertwined with" the individual Defendant's underlying obligations under the Agreement. *See McBro Planning and Dev. Co.*, 741 F.2d at 344. Further, because Plaintiff alleges the same conspiratorial and tortious conduct on the part of all Defendants, the claims against Tech USA are "based on the same operative facts and are inherently inseparable from the claims against" the individual Defendants. *See Harvey*, 199 F.3d at 795. Tech USA's potential liability derives from the individual Defendants' conduct and their liability pursuant to their Agreement. *See id.* For these reasons, Tech USA is entitled to a stay pending arbitration.

Moreover, Plaintiff's claims against Tech USA make reference to, presume the existence of, arise out of, and/or relate directly to the relevant Agreement, and Plaintiff must rely on the terms of the Agreement in asserting its claims against Tech USA. Plaintiff's claims against Tech USA are based on an alleged conspiracy and allegations of "substantially interdependent and concerted misconduct" by Defendants. As such, Plaintiff is equitably estopped from avoiding arbitration with Tech USA, and Tech USA is entitled to compel arbitration pursuant to the Agreement.[11] *See MS Dealer Serv. Corp.*, 177 F.3d at 947.

---

[11] In arguing that Tech USA is not entitled to arbitration, Plaintiff relies on *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds*, *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003). Plaintiff's reliance on *In re Humana* is misplaced. "The plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is ... always the *sine qua non* of an appropriate situation for applying equitable estoppel." *Id.* at 976.

For these reasons, as well as for reasons stated with respect to Beck and Belbot's motions and pursuant to 9 U.S.C. §§ 3 & 4, this matter shall proceed to arbitration on claims covered by the arbitration agreement, including Counts IV, VI, and VII of Plaintiff's Complaint against Tech USA.

Accordingly, it is

**ORDERED AND ADJUDGED** that

1)      Jason Beck's motion (Dkt. 22) is **GRANTED IN PART and DENIED IN PART**. This matter shall proceed to arbitration on Counts IV, V, VI, and VII of Plaintiff's Complaint against Beck.  The motion is otherwise denied.

2)      Steven Belbot's motion (Dkt. 23) is **GRANTED IN PART and DENIED IN PART**. This matter shall proceed to arbitration on Counts IV, V, VI, and VII of Plaintiff's Complaint against Belbot.  The motion is otherwise denied.

3)      Tech USA, Inc.'s motion (Dkt. 26) is Tech USA is **GRANTED IN PART and DENIED IN PART**.  This matter shall proceed to arbitration on Counts IV, VI, and VII of Plaintiff's Complaint against Tech USA.  The motion is otherwise denied.

4)      The parties shall file a status report with the Court regarding the status of arbitration within one hundred and eighty (180) days of the date of this Order.  The parties shall also file a status report regarding the outcome of arbitration with the Court within ten (10) days after its completion.

**DONE AND ORDERED** in chambers this __19th__ day of June, 2006.

_____
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record